IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYLER SMITH, | No. C 10-0407 SI |
| Plaintiff, | **ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT AND GRANTING MOTION TO REMAND** |
| v. | |
| ALLSTATE INSURANCE COMPANY, et al., | |
| Defendants. | |

Defendants have filed a motion to dismiss plaintiff's First Amended Complaint, and plaintiff has filed a motion to remand this action to Alameda County Superior Court. Both motions are set for hearing on June 18, 2010. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing. Having considered the papers submitted and for good cause shown, the Court DENIES the motion to dismiss the complaint, GRANTS the motion to remand, and REMANDS this action to the Alameda County Superior Court where it was filed.

**BACKGROUND**

This action arises out of a previous insurance claim dispute between plaintiff Tyler Smith and defendants Allstate Insurance Company, Allstate Indemnity Company (collectively, "Allstate"), Brian Har, and Ira Spratley, regarding coverage of damages incurred by plaintiff during a September 9, 2004 motor vehicle accident (the "Accident"). On September 1, 2006, plaintiff formally demanded arbitration pursuant to his insurance policy contract, at which point Allstate forwarded the matter to defendant attorneys Har and Spratley. In November 2008, the arbitration concluded with an award of $75,000 to

plaintiff.

According to the first amended complaint, during the course of the arbitration, Allstate's attorneys, Har and Spratley, fraudulently misrepresented material facts with the intent of obstructing the administration of plaintiff's claim and gaining an unfair advantage. The complaint alleges that Har and Spratley engaged in a pervasive pattern of deceit, making repeated misrepresentations as to the facts of the case and the course of the litigation to plaintiff's detriment. Plaintiff alleges Har and Spratley claimed to have sent interrogatories and a deposition notice, when they had in fact sent none. Compl.¶¶ 47, 52. The complaint also alleges that on December 15, 2006 Spratley threatened to charge a "no-show" fee if plaintiff failed to appear at his independent medical examination ("IME"), when in fact there was no provision in the insurance contract specifying any such fees would be assessed. Compl. ¶¶ 49, 53-54. On January 31, 2007, after plaintiff attended his IME, "Spratley telephoned Scott L. Woodall's office claiming that Tyler Smith failed to attend his defense medical examination . . . . [a]nd advised [Woodall's] office that Allstate would seek money damages against plaintiff for missing the appointment." Compl. ¶¶ 53-54. . On February 5, 2007, Spratley retracted his claim that he had sent interrogatories to plaintiff, and forwarded what the complaint alleges were discovery documents backdated to January 15, 2007. Compl. ¶ 59. He also admitted to error with respect to the IME.

The complaint further alleges Spratley intentionally misrepresented the nature of the evidence defendants intended to produce at the first arbitration hearing. Plaintiff claims Spratley deliberately failed to disclose in discovery documents his intention to introduce as an expert witness Dr. William Hoddick, whom he had subpoenaed to testify in early June 2007, well before said discovery documents were sent to plaintiff. Compl. ¶ 70. Spratley did not actually inform plaintiff's counsel of their intention to present Hoddick's testimony until August 29, 2007, a day before the hearing. Compl. ¶ 71. On August 30, Har offered a continuance to plaintiff's counsel, stipulating that Allstate would pay the cancellation fees for Arbitrator Samuel Feng and plaintiff's expert witness, Dr. Michael Roback, who had flown out from Connecticut. The delay cost plaintiff $2,500, which Allstate has refused to pay, despite Har's promise to the contrary. Compl. ¶¶ 72-73.

During another case, plaintiff discovered that Arbitrator Feng had close financial ties to Allstate, and by virtue of their employment by Allstate, Har and Spratley. Compl. ¶ 74. Plaintiff alleges that Har

2

and Spratley intentionally omitted to disclose Feng's financial ties to Allstate, and that it was their responsibility, not Mr. Feng's, to disclose the conflict pursuant to California Rule of Professional Conduct 3-310. Compl. ¶ 79. Plaintiff claims that Har and Spratley sought to lull plaintiff into mistakenly believing Mr. Feng was unbiased. Although plaintiff's attorneys wrote to Har and Spratley on October 30, 2007 demanding an explanation as to Spratley's failure to disclose their intention to call Hoddick to testify at the August 30 hearing, and proposing a new arbitrator, defendants never offered an explanation, and did not reply with respect to the suggested arbitrators until January 23, 2008, after plaintiff sent a follow-up letter.

Finally, the complaint alleges that despite the fact Allstate had a legal duty to provide information regarding plaintiff's automobile policy at plaintiff's behest, Allstate neither responded to plaintiff's queries regarding his policy's underinsured motorist coverage nor obliged his request for a certified copy of his insurance policy contract. Moreover, Har and Spratley failed to provide the insurance contract and photographs of the damage incurred at the Accident, while alleging that the Accident was low-impact, and despite the fact that both were in its possession. Compl. ¶ 91. Plaintiff alleges that defendants Spratley and Har intentionally withheld such information and misrepresented material facts in order to defraud plaintiff; that defendant knew its representations to be false; and that plaintiff reasonably relied on defendants' representations to his financial detriment as a proximate result thereof.

On December 2, 2009, plaintiff filed this action in the Alameda County Superior Court against Allstate, Spratley and Har. Defendants removed the case to this Court pursuant to 28 U.S.C. § 1441(b) on January 10, 2010, predicating subject matter jurisdiction on diversity of citizenship. After removal to this Court, plaintiff sought and obtained leave to amend his complaint. The first amended complaint asserts eight causes of action against all defendants: Breach of Contract; Bad Faith Insurance Practices; Unfair Business Practices; Fraud and Misrepresentation; Intentional Infliction of Emotional Distress; Negligent Infliction of Emotional Distress, and Breach of Fiduciary Duty.[1]

---

[1] Plaintiff has since conceded that the Breach of Contract and Bad Faith Insurance Practices claims cannot be asserted against individual defendants Har and Spratley. Pl.'s Opp'n to Defs.' Mot. to Dismiss 8.

3

Plaintiff has filed a motion to remand this case to the Alameda County Superior Court pursuant to 28 U.S.C. § 1447(c). Defendants contend that defendants Har and Spratley have been fraudulently joined and thus cannot defeat diversity jurisdiction, and have moved to dismiss the complaint for failure to state a claim.

**LEGAL STANDARD**

A defendant can remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). A district court has diversity jurisdiction over any civil action between citizens of different states as long as the amount in controversy exceeds $75,000, excluding interest and costs. 28 U.S.C. § 1332. If at any time before final judgment it appears that a district court lacks subject matter jurisdiction over a case that has been removed to federal court, the case must be remanded. 28 U.S.C. § 1447(c).

The party that seeks to remain in federal court has the burden of proof on a motion to remand to state court. *See Conrad Assocs. v. Hartford Accident & Indem. Co.*, 994 F. Supp. 1196, 1198 (N.D. Cal. 1998). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988) (citations omitted).

Fraudulent joinder is one exception to the requirement of complete diversity under 28 U.S.C. § 1332. Fraudulent joinder "is a term of art" used to describe a non-diverse defendant who has been joined to an action for the sole purpose of defeating diversity. *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). In order to prove fraudulent joinder, the defendant must prove that the plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (citing *McCabe*, 811 F.2d at 1339). There is a heavy burden on the defendant as "[f]raudulent joinder must be proven by clear and convincing evidence," *Hamilton Materials, Inc v. Dow Chemical Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007), and "all disputed questions of fact and all ambiguities in the controlling state law are [to be] resolved in plaintiff's favor." *Calero v. Unisys Corp.*, 271 F.Supp.2d

4

1172, 1176 (N.D. Cal. 2003). "If there is a non-fanciful possibility that plaintiff can state a claim under [state] law against the non-diverse defendants the court must remand." *Macey v. Allstate Prop. & Cas. Ins. Co.*, 220 F. Supp. 2d 1116, 1118 (N.D. Cal. 2002).

## DISCUSSION

Defendants contend that diversity jurisdiction exists because the two non-diverse defendants were fraudulently joined. Defendants first contend that because Har and Spratley served as in-house counsel to and employees of Allstate, they acted as agents of Allstate, and cannot be held personally liable to plaintiff. Second, defendants contend that the litigation privilege, California Civil Code § 47(b), immunizes Har and Spratley from liability for communications made in connection with litigation against plaintiff. Third, defendants contend that plaintiff fails to meet the heightened pleading standard for fraud and misrepresentation required by Fed. R. Civ. P. 9(b). Finally, they argue that plaintiff cannot conceivably satisfy the third-party justifiable reliance element necessary to state a valid fraud claim under California law.

### 1. Agency

Defendants contend that Har and Spratley acted as agents of Allstate and thus cannot be held personally liable for their conduct. As a general rule, an agent is not personally liable for actions that fall fully within the scope of his employment. *See Macey*, 220 F. Supp. 2d at 1119; *Weiss v. Washington Mutual Bank*, 53 Cal. Rptr. 3d 782, 785 (Cal. Ct. App. 2007); *Lippert v. Bailey*, 50 Cal. Rptr. 478, 481-82 (Cal. Ct. App. 1966). However, California law recognizes exceptions to this rule when an agent acts as a dual agent, or when he breaches a special duty. *See Macey*, 220 F. Supp. 2d at 1116. The dual agency exception applies where an agent assumes duties beyond those required by his employer, and thus may be held independently liable for those acts. *Id.* The special duty exception is derived from the premise that an insurance agent's "representations as to the scope of coverage imposes [sic] a special duty of care to the insured." *See Smith v. New England Mut. Life Ins. Co.*, 1998 WL 775124, at *1 (N.D. Cal. 1998) (quoting *Paper Savers, Inc. v. Nacsa*, 59 Cal. Rptr. 2d 547, 552 (Cal. App. Ct. 1996)); *see also Macey* 220 F. Supp. 2d at 1126.

5

A third line of cases hold that an agent or employee "is always liable for his own torts, whether his employer is liable or not.'" *Holt v. Booth*, 2 Cal. Rptr. 2d 727, 730 (Cal. Ct. App. 1991) (citing 5 Witkin, *Summary of Cal. Law* § 32, (9th ed. 1988)). Under this framework, even if a "'tortious act has been committed by an agent acting under authority of his principal, the fact that the principal thus becomes liable does not, of course, exonerate the agent from liability.' . . . The fact that a tortious act arises during the performance of a duty created by contract does not negate the agent's liability." *Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone*, 131 Cal. Rptr. 2d 777, 788 (Cal. Ct. App. 2003) (quoting *Bayuk v. Edson*, 46 Cal. Rptr. 49, 56 (Cal. Ct. App. 1965)).

The facts of *Shafer* are analogous to those of this case. In *Shafer*, an insurer's counsel was held personally liable for defrauding a third party claimant who had secured a judgment against the insurer's policy holder. *Id.* at 798. The court ruled the third party claimant was to be treated as a third party beneficiary to the insurance contract under Cal. Ins. Code § 11580, and that accordingly, both the insurer and its counsel owed the same duty to the third party as its insured not to make knowing misrepresentations regarding policy coverage. *See id.* Here, Har and Spratley are in-house counsel to Allstate and were acting as Allstate's agents during the arbitration of plaintiff's motor insurance claim. Although plaintiff concedes that Har and Spratley acted within the scope of their employment, they, like the attorney in *Shafer*, may not defraud the insured with impunity and may still be held personally liable for their tortious conduct. *See id.* at 788. The possibility that Allstate is itself liable for Har and Spratley's actions does not bar them from liability by virtue of their agency relationship.

Defendants point to several cases in support of their contention that unless an insurance agent or an employee is a dual agent, he cannot be held individually liable. *See, e.g., Mercado v. Allstate Ins. Co.*, 340 F.3d 824, 826 (9th Cir. 2003) (finding joinder of an agent fraudulent because plaintiff failed to establish agent's assumption of duties to plaintiff beyond those required by insurer in scope of employment); *Charlin v. Allstate Ins. Co.*, 19 F. Supp. 2d 1137, 1140-41 (C.D. Cal. 1998) (same). *Mercado*, however, is unavailing to defendants because at issue in that case was an insurer's agent's alleged tortious breach of the implied covenant of good faith and fair dealing, which was virtually indistinguishable from its contractual counterpart. *Mercado,* 340 F.3d at 827. As a result, the court disposed of the cause of action as though it sounded in contract, and held plaintiff could not state a claim

against the agent because the agent was not party to the insurance contract. *See id.* at 826. It is well-established, however, that agents may be held personally liable for fraud and negligent misrepresentation. *See, e.g.*, *McNeill v. State Farm Ins. Co.*, 10 Cal. Rptr. 3d 675, 679 (Cal. Ct. App. 2004); *Macey* 220 F. Supp. 2d at 1119; *Shafer*, 131 Cal. Rptr. 2d at 789; *Cicone v. URS Corp.*, 183 Cal. Rptr. 887, 891 (Cal. Ct. App. 1986). *Mercado* and *Charlin*, moreover, focus only on the dual agency exception, and take no account of the "special duty" exception to the general rule that agents are not liable for actions performed fully within the scope of their duties. Allstate's agency relationship with Har and Spratley thus does not shield Har and Spratley from liability.

### 2. Cal. Civ. Code § 47(b) Litigation Privilege

Defendants contend that Har and Spratley's alleged misrepresentations fall under the protection of the litigation privilege codified in Cal. Civ. Code § 47(b). Section 47(b) states in relevant part that a privileged communication is one conveyed in any "(1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorised by law, (4) in the initiation or course of any other proceeding authorized by law . . . ." Cal. Civ. Code § 47 (West 2005). "In immunizing participants for liability for torts arising from communciations made during judicial proceedings, the law places upon litigants the burden of exposing during trial the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and avoiding" unending litigation. *Silberg v. Anderson*, 266 Cal. Rptr. 638, 643 (Cal. 1990). But "[j]ust as an insurer may be held liable for defrauding its insured, so an insurer should not be allowed to deceive a third party beneficiary of the insurance policy. [Citations omitted] And if an insurer may be found liable to a third party beneficiary for fraud, so may its coverage counsel."*Shafer*, 131 Cal. Rptr. 2d at 797; *see also Cicone*, 183 Cal. Rptr. at 890-91.

The relationship between attorney and client is one of agent and principal. *Shafer*, 131 Cal. Rptr. 2d at 789. However, as with most other agency relationships, "if the activities of a nonlawyer in a set of circumstances would render the non-lawyer civilly liable . . . , the same activities by a lawyer in the same circumstances generally render the lawyer liable." *Id.* (quoting Restatement (Third) of Law Governing Lawyers § 56, cmt. b (2000)). By extension, a lawyer communicating with a non-client may not knowingly make a false statement of material fact to a non-client. *Id.* For in California, "it is well

7

established that an attorney may not, with impunity, either conspire with a client to defraud or injure a third person or engage in intentional tortious conduct toward a third person." *Id.* (quoting *Cicone*, 183 Cal. Rptr. at 890).

The communications allegedly made by Har and Spratley were made in furtherance of achieving Allstate's goals in the arbitration, and if made in good faith, would certainly be protected by § 47(b). Plaintiff, however, alleges that the communications were made with intent to defraud. Because an attorney may not engage in intentional tortious conduct toward a third person, if Har and Spratley state a valid claim for fraudulent misrepresentation, it would seem clear that § 47(b) will not immunize them from liability.

Defendants, however, argue that Har and Spratley could not be held personally liable because *Shafer* limited the restriction on the litigation privilege's use to cases in which coverage counsel make knowing misrepresentations to third party beneficiaries entitled to damages under Cal. Ins. Code § 11580. Though *Shafer* involved a controversy under § 11580, there is no indication in the language of the opinion that the restriction on the use of the litigation privilege defense is limited to those fraud cases arising out of § 11580 disputes. On the contrary, the *Shafer* court reaches its conclusion that coverage counsel is not immune from liability for defrauding § 11580 third party beneficiaries by likening the duty owed by coverage counsel to a third party beneficiary, to that owed by an insurer to its insured. *Id.* (Section 11580 "inures to the benefit of any and every person who might be negligently injured by the assured as completely as if such injured person had been specifically named in the policy.") (quoting *Malmgren v. Southwestern A. Ins. Co.*, 201 Cal. 29, 33 (Cal. 1927)). Thus, in barring the litigation privilege defense in fraud cases arising out of § 11580 actions, *Shafer* implicitly recognizes that the litigation privilege cannot be invoked by coverage counsel to shield itself from liability for fraudulent statements made both to its clients' insured and third party beneficiaries. *See* H. Walter Croskey et al., *California Practice Guide: Insurance Litigation* § 12:1332 (2009) ("The insurer may not invoke the litigation privilege as a defense to fraud claims by its own insured or a third party beneficiary . . . . Where an insurer is subject to liability to its insured . . . so also is its coverage counsel."). For this reason, Cal. Civ. Code § 47(b) will not shield Har and Spratley from personal liability for fraud, even though this action does not arise out of § 11580.

**3.    Fraud**

Although plaintiff has alleged eight causes of action, he need only state one valid claim to survive the motion to dismiss and secure a remand to state court. *McCabe*, 811 F.2d at 1339. Accordingly, the court limits its inquiry to plaintiff's fraud claim. As this court sits in diversity, California law is determinative of what elements plaintiff must plead in order to state a valid claim. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). The elements of a valid cause of action for fraud in California include: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Id.* (quoting *Engalla v. Permanente Med. Group, Inc.*, 938 P.2d 903 (Cal. 1997)) (internal quotation marks omitted).

Defendants contend that plaintiff's cause of action for fraudulent misrepresentation against Har and Spratley should be dismissed for failure to plead facts with sufficient particularity to meet the requirements of Fed. R. Civ. P. 9(b). Although the Court sits in diversity, the federal procedural rules apply "irrespective of the source of subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003) (citing *Hanna v. Plumer*, 380 U.S. 460 (1965)). When fraud is alleged, "a party must state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b) demands that facts be alleged in detail sufficient to give defendants notice of particular misconduct, so that they can defend with specificity rather than simply denying a plaintiff's allegations generally. *Kearns*, 567 F.3d at 1124 (citing *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Moreover, a party must allege more than just neutral facts necessary to identify the transaction in question. *Kearns*, 567 F.3d at 1124.

Plaintiff's first amended complaint states in detail Har and Spratley's pattern of alleged misconduct leading up to the arbitration proceeding, and meets this standard. First, plaintiff alleges that Spratley deliberately and fraudulently concealed his intention to call Dr. Hoddick as an expert witness

9

until the day before the August 30, 2008 hearing. He claims that because Spratley subpoenaed this witness as early as June 2008, he had an obligation to disclose this information with his response to plaintiff's interrogatories. As a result of the delay stemming from this misrepresentation, plaintiff allegedly suffered damage. Second, plaintiff alleges that on the day the first hearing should have occurred, Har offered plaintiff a continuance, to which plaintiff stipulated on the condition that Har covered all cancellation expenses for the Arbitrator and plaintiff's expert witness. Plaintiff claims that the damages incurred in reasonable reliance on plaintiff's promise amounted to $2,500, and that Har made this offer without any intention of honoring it. Finally, plaintiff contends that Arbitrator Feng had close financial ties to Allstate, and by extension, to Har and Spratley. Plaintiff further alleges that Har and Spratley selected Arbitrator Feng because of this biased relationship; that Har and Spratley deliberately and fraudulently concealed this information from plaintiff's attorneys in the hopes of deceiving them into believing and relying on the assumption he was neutral; and that the delay resulting from this concealment proximately caused damage to plaintiff.

All three of these allegations make clear who is charged with fraud, who was damaged by their conduct; what conduct amounted to such fraud; and that in at least one case, concrete damages were suffered by plaintiff. Thus, plaintiff pleads all of the elements of fraud, and with sufficient specificity to give defendants ample information to respond to the allegations with more than a blanket denial. For this reason, plaintiff meets the requirements of Rule 9(b).

Defendants lastly argue that plaintiff could not have reasonably relied on defendants' alleged misrepresentations because defendant knew Har and Sprately were opposing counsel and that they were inherently biased. As noted previously, "'a lawyer who is known to represent a person in a negotiation will be understood by non-clients to be making non-impartial statements, in the same manner as would the lawyer's client. Subject to such an understanding, the lawyer is not privileged to make knowing misrepresentations . . . ',"  and may be liable for tortious harm resulting therefrom. *Shafer*, 131 Cal. Rptr. 2d at 798.

Whether or not reliance was justified or reasonable is a question of fact to be determined by weighing the evidence. *Gray v. Don Miller & Associates, Inc.*, 674 P.2d 253, 255 (Cal. 1984); *Alfaro v. Community Housing Improvement System & Planning Assn., Inc.*, 171 Cal. App. 4th 1356, 1383 (Cal.

10

Ct. App. 2009). Review of whether there is sufficient evidence to support the finding of fraud is, however, a procedural matter in which the Court must apply federal law. *Neely v. St. Paul Fire & Marine Ins. Co.*, 584 F.2d 341, 345 (9th Cir. 1978). If there is even a remotely nonfanciful chance a reasonable jury could find the plaintiff justifiably relied on Har and Spratley, they can survive a motion to dismiss. Plaintiff alleges he had no choice but to rely on Har and Spratley's representations of Feng's neutrality, and contends that had he known Har and Spratley were offering to pay cancellation expenses in bad faith, he would not have agreed to a continuance. Factual controversy on this matter thus exists, and it is possible that the trier of fact could find plaintiffs reasonably relied on the alleged false statements and concealed facts.

**CONCLUSION**

As was noted earlier, the case law requires that in order to prove fraudulent joinder, a defendant must prove, by clear and convincing evidence, that plaintiff failed to state a cause of action against the resident defendant, and that the failure is obvious according to the settled rules of the state. Further, in making this evaluation all disputed questions of fact and all ambiguities in the controlling state law must be resolved in plaintiff's favor. Under these circumstances, and in this context, the Court DENIES defendants' motion to dismiss the First Amended Complaint and GRANTS plaintiff's Motion to Remand. This action is REMANDED to the Alameda County Superior Court.

**IT IS SO ORDERED.**

Dated June 17, 2010

_____
SUSAN ILLSTON
United States District Judge

11